No. 18,714.

.Castle Canon Company, assignee *v.* Al A. Atwood.

(351 P. [2d] 459)

Decided May 2, 1960.

Mr. Chester A. Bennett, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

Mr. Chief Justice Sutton delivered the opinion of the Court.

The Castle Canon Company, as successor in interest to Universal C.I.T. Credit Corporation, commenced the instant action against Al A. Atwood to recover a balance of $1531.99 due upon an original debt of $3868.23, evi-

denced by a Colorado Chattel Mortgage. The same instrument combines both the note and mortgage. The payee named in the instrument was the Gamble Equipment Company, and the instrument itself contained an assignment from Gamble to Universal C.I.T. It provided that payments made by the buyer to the payee Gamble were made to Gamble as payor's agent.

Atwood filed an answer asserting as a sole defense that the debt had been discharged by his bankruptcy proceeding in the District Court of the United States on April 22, 1957. The trial court ruled that the debt had been discharged, and ordered the action to be dismissed.

The sole question here presented is whether the debt in fact had been so discharged. Determination of this issue hinges upon whether the debt was properly "scheduled" as required by 11 U.S.C.A. Sec. 35. We conclude that it was.

The obligation was originally incurred when Atwood purchased an International pick-up truck from Gamble. He made a cash down payment and executed the chattel mortgage to secure the balance due. He made three payments on the mortgage to Gamble who accepted them for "C.I.T." Credit for these is given in the settlement sheet in evidence. There were twenty-three monthly installments called for and the mortgage contained within its provisions the following language immediately above Atwood's signature:

"The foregoing mortgage is hereby accepted and assigned to UNIVERSAL C.I.T. CREDIT CORPORATION in accordance with contents of assignment on reverse side."

Other terms relating to the assignment are to be found in fine print above the quoted provision. Among these are the following:

"All payments are due at Universal C.I.T.'s office, New York, Chicago or San Francisco. * * *."

Schedule A-2, attached to the discharge in bankruptcy,

lists the debt in question. The first listing is as follows:

*Creditor and residence:*

"C.I.T. Corporation, Centennial Bldg., 210 W. 10th Street, Kansas City, Missouri"; *nature of debt:* "Note and Chattel Mortgage 1955 Intern's Truck 189, 1955-56, Returned to Gamble Equipment"; Value: "$3000.00." Amount due or claimed: "$3600.00."

There also appears in the schedule of debts the identical name of "C.I.T." with the identical Missouri address for a certain trailer also mortgaged by Atwood who had been paying on that indebtedness direct to Kansas City.

C.I.T. urges that its correct name is Universal C.I.T. as appears in the instrument before us and that failure to use the full name in the schedule, along with one of the contract addresses, voids the scheduling as to the truck debt. C.I.T. relies on *In re Osofsky* (1931) 50 F. (2d) 241. There the court stated in pertinent part:

"Section 17 of the Bankruptcy Act (11 USCA §35) excepts from debts barred by discharge those that 'have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.'

"* * *.

"* * *. The bankrupt, however, denies knowledge of any transfer. Even if this were true as to these two notes of late maturities, he was certainly cognizant of the transfer of the note of the same series which had fallen due prior to bankruptcy. And it would seem that this circumstance was sufficient to charge him with the duty of inquiry concerning the later notes. When he made up his schedules he could readily have learned from the payee whether the notes had been passed on to others. * * *.

"* * *.

"In a case of this sort, there is a clashing between the two purposes sought to be accomplished by the Bankruptcy Act, a discharge from debts of the honest debtor

who is engulfed and an' equitable distribution of his estate among his creditors. To hold that the bankrupt is not discharged is to defeat in part the former purpose. To hold that he is discharged is to deprive the creditor of his right to participate in the administration of the estate and in the proceeds. In this dilemma the law favors the bankrupt. It does not call upon him to run down all his obligations and name the the present holders of them, at the risk of having his discharge held ineffective against them. Such a task would often be a formidable one. But this does not mean that the bankrupt may list the original creditor, when he knows, or ought to know, that another is the present holder of his obligation, and in my opinion that is this case. I therefore hold that the debt represented by the judgment was not duly scheduled and is not dischargable, and that the stay should be vacated."

■ Here we have a different situation than in Osofsky. This record discloses that Atwood did list the assignee of his debt by its name used in his dealings both with Gamble and as referred to in his other direct dealing with it as well as listing its address at its branch office, which was known to him and where he had made previous payments on his trailer.

We point out that no street address was listed in the contract itself for Universal C.I.T. in New York, Chicago or San Francisco, hence it is apparent that receipt of actual notice was more assured by directing it to the branch office, where an address was known and where the account was obviously kept, than to one of its several main offices where no definite address was listed.

We also point out that as to the trailer scheduled for the Kansas City office no complaint was made by the creditor and ostensibly it received notice of its scheduling so would have known that Atwood was taking bankruptcy.

We conclude that the course of dealings between Universal C.I.T., Gamble and Atwood amount to a waiver

of the right of C.I.T. to insist on the full use of its name or that notice of the bankruptcy proceeding be sent to one of the general offices listed in the assigned mortgage. So considered, the debt was thus duly scheduled within the meaning of the statute. There was sufficient evidence in the record to sustain the findings of the trial court; the judgment is therefore affirmed.